David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, California 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

Ethan Preston (SBN 263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiffs Samuel Katz
and Lynne Rhodes, on their own behalf, and
behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL KATZ and LYNNE RHODES, individually, and on their own behalf and on behalf of all others similarly situated,<br><br>         Movants,<br><br>         v.<br><br>SHELL ENERGY NORTH AMERICA (US), LP, a California corporation,<br><br>         Respondent. | No.  **'21CV133  W    MSB**<br><br>**DECLARATION OF ETHAN PRESTON SUPPORTING PLAINTIFFS' MOTION TO COMPEL PRODUCTION BY SHELL ENERGY NORTH AMERICA (US), LP**<br><br>Originating Case: *Katz v. Liberty Power Corp., LLC, Liberty Power Holdings, LLC*, No. 1:18-cv-10506, pending in the United States District Court for the District of Massachusetts |

ETHAN PRESTON hereby declares:

    1.    My name is Ethan Preston. I am over the age of eighteen and am fully competent to make this declaration. I am one of the attorneys representing

Plaintiffs in the above-titled action. I have personal knowledge of all of the facts set forth in this declaration and could testify thereto if called to do so, except where specifically stated otherwise.

2.     **The Stipulated Protective Order:** On May 25, 2018, the originating Court entered a stipulated protective order ("SPO") for confidential information in this case. (*See* Stipulated Protective Order, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. May 25, 2018), ECF No. 20.) A true and correct copy of this SPO is attached as Exhibit 1 to this Declaration.

3.     **The Court's Discovery Order:** On June 26, 2020, the originating Court entered an order compelling Defendants Liberty Power Corp., LLC and/or Liberty Power Holdings, LLC ("Defendants") to comply with various discovery requests, including communications with persons who received a subpoena about the case (Request for Production of Documents ("RPD") 12), and documents concerning financial transactions with Defendants' insiders and affiliates (RPDs 70-72 and 77-78). *Katz v. Liberty Power Corp., LLC*, No. 18-10506, 2020 WL 3492469, *4-7 (D. Mass. June 26, 2020) ("*Katz II*"). On December 7, 2020, Plaintiffs moved to enforce the Court's order with respect to RPDs 70-72 and 77-78. (Plaintiffs' Motion to Enforce the Court's Financial Discovery Order, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. Dec. 7, 2020), ECF No. 243.) On December 11, 2020, Plaintiffs moved to enforce the Court's order with respect to RPD 12 and certain other discovery. (Plaintiffs' Motion for a Privilege Log and Other Relief, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. Dec. 11, 2020), ECF No. 247.) Briefing on both those motions is now complete.

4.     **Defendants Produce Promissory Notes:** On August 26, 2020, Defendants produced two promissory notes under which Defendants' owners (including David Hernandez, Defendants' CEO) loaned money to Defendants (labeled LP_089276-84, and designated as confidential under the SPO). Defendants described these promissory notes as "responsive to Request Nos. 71

and 77." The second promissory note (reflecting a loan to Holdings) references a contemporaneous "Mezzanine Loan Agreement."

5.      **Defendants Produce the Mezzanine Loan Agreement:** On September 24, 2020, Defendants produced a redacted copy of the Mezzanine Loan Agreement and a related Security Agreement (LP_089285-318, also designated as confidential under the SPO). The Mezzanine Loan Agreement refers to and effectively incorporates the terms of several other documents into its terms:

- the Intercreditor Agreement (referenced at LP_089288, 290, 292, 294);
- the First Lien Documents (referenced at LP_089287, 290, 292, 293, 294, 295); and
- the Third Lien Documents (referenced at LP_089289, 294, 295).

The Mezzanine Loan Agreement identifies Boston Energy Trading and Marketing LLC ("BETM") as the First Lien Lender, and Shell Energy North America (US), LP ("SENA") as the Third Lien Lender. The Second Lien Lenders include David Hernandez. As Third Lien Lender, SENA is Defendants' creditor and has presumably accepted more risk than the other, more senior creditors. Defendants have not produced the Intercreditor Agreement, the First Lien Documents, the Third Lien Documents, or any communications with BETM or SENA (including any diligence documents that describe this litigation and would be responsive to RPD 12).

6.      **Defendants Produce the Management Services Agreements:** On November 4, during the conference, Defendants produced certain documents identified in the Mezzanine Loan Agreement, including two Management Services Agreements ("MSAs") (LP_1544196-209, also designated as confidential under the SPO). These MSAs provide for Liberty Power Holdings, LLC to pay Liberty Power Corp., LLC for various expenses Corp. incurs in managing and/or operating Holdings' business, and retain records for such expenses. (LP_1544197(Sections

3.1 and 3.2); LP_1544202 (Schedule A); LP_1544204 (Sections 3.1 and 3.2); LP_1544209 (Schedule A).) Defendants have ignored Plaintiffs' requests to produce those expense records.

7.      **BETM Documents Reflect Payments to David Hernandez:** On November 18, 2020, Plaintiffs served a subpoena on BETM. On January 8, 2021, BETM produced certain documents to Plaintiffs (BETM0001-0144, also as confidential under the SPO). BETM's production includes a document titled "Index of Liberty Power Corp. Funding Requests for Payments to Its Managers, Other Members, Insiders and/or Affiliates Since July 2020" which reflects various requests for payments to David Hernandez since July 21, 2020 to the present. (BETM0001.) Despite Plaintiffs' automated search and review of Defendants' production, they have not found any communications with BETM or any documents reflecting Corp.'s payments to David Hernandez.

8.      **SENA Has a San Diego Office:** Plaintiffs' counsel downloaded correspondence from SENA at https://ww2.arb.ca.gov/sites/default/files/classic//fuels/lcfs/workshops/12042017_shellenergy.pdf. The correspondence provides the address SENA's San Diego office at Shell Energy North America, 4445 Eastgate Mall, Suite 100, San Diego, California 92121.

9.      **SENA Has a Security Interest in Defendants:** In September 2020, Plaintiffs' counsel obtained a UCC filing from the Delaware Secretary of State for Defendants reflecting SENA's security interest in all Defendants' assets, dated February 18, 2014. A true and correct copy of this UCC filing is attached as Exhibit 2 to this Declaration.

10.     **Plaintiffs' Subpoena:** On December 2, 2020, Plaintiffs served a subpoena on SENA. A true and correct copy of Plaintiffs' subpoena, together with proof of service, is attached as Exhibit 3 to this Declaration. The subpoena contains the following directions regarding native format:

Shell shall produce any electronic documents requested herein in

"native format," meaning the format in which they are ordinarily used or accessed by it outside of litigation. Native format explicitly includes application-specific metadata (like File Properties for Shell Word .doc files) and file system metadata (like the date of creation and modification and file permissions stored in an NTFS-formatted file system). In particular, Shell shall produce electronic documents with their original filepath.

(Ex. 3 at 4.) The subpoena sought the following documents:

1. All communications with Liberty Power since March 16, 2014.

2. All documents which Shell relied on or reviewed in preparation for any transaction(s) (including any loan or secured interest) with Liberty Power since March 16, 2014.

3. All documents concerning any communication regarding the case captioned above (including this Subpoena) between Shell and another person (excluding Plaintiffs and their attorneys).

4. All documents concerning any incident in which any document which would be or would have been responsive to this subpoena was destroyed, delinked, de-referenced, deleted, and/or access to such document was lost (including by way of example but not limited to any document retention policy under which any document which would be or would have been responsive to this subpoena was destroyed, delinked, de-referenced, deleted, and/or access to such document was lost).

5. To the extent that you intend to charge Plaintiff any cost or expense for complying with this subpoena, all documents on which you may rely to support such cost or expense.

6. To the extent that you object to this subpoena, every document on which you may rely to support such objection in any dispute regarding this subpoena.

(Ex. 3 at 6-7.)

11. **Plaintiffs' Initial Efforts to Meet and Confer Were Unsuccessful:** On December 7, 2020, SENA's representative contacted Plaintiffs' counsel by email to request 60 day extension. The same day, Plaintiffs' counsel emailed SENA's representative to make a counterproposal. Plaintiff and SENA continued to exchange various communications, but SENA indicated on December 17 that it had not received prior emails from Plaintiffs' counsel. SENA's email stated, in relevant part, "Thank you for your voicemail.  I did see the previous communications from you and, yes, they were in my Spam folder."

12. **SENA's Objections to the Subpoena:** On December 15, 2020,

SENA mailed and emailed formal objections to the subpoena. A true and correct

excerpt of SENA's objections is attached as Exhibit 4 to this Declaration. For each

of the subpoena's requests, SENA's objections states:

> Shell objects to this request as overly broad and unduly burdensome. Shell objects to this request as it seeks information not relevant to the subject matter of the litigation. Shell objects to this request to the extent that it seeks information not in Shell's possession, custody, or control. Shell objects to this request to the extent that it seeks information covered by the attorney client privilege, work product doctrine and/or any other applicable privileges. As stated above, Shell has attempted to confer with the subpoenaing party to further understand what is being requested but has not received a response. Shell reserves the right to supplement this subpoena should relevant, responsive, and non-privileged information become available.

(Ex. 4 at 1-2.)

13.    **Plaintiffs' Meet and Confer Letter:** On December 16, 2020,

Plaintiffs' counsel emailed and faxed a meet and confer letter to SENA's

representatives. A true and correct copy of the meet and confer letter is attached as

Exhibit 5 to this Declaration. Generally, the meet and confer letter identifies

deficiencies in SENA's objections to the subpoena. The letter also indicated that

SENA's objections were too generic to facilitate the meet and confer process, and

stated they would be "better able to discuss Shell's objections if [they understood]

what responsive documents exist, and the available methods and means of

collection, so Plaintiffs can make an informed decision about how to narrow the

subpoena." Plaintiffs' counsel also called SENA's representatives but was

unsuccessful speaking with any of them, and left a voicemail.

14.    **Plaintiffs Continue to Meet and Confer:** On December 18, 2020,

Plaintiffs' counsel met and conferred with SENA's representative by telephone.

During that call, SENA indicated its views the subpoena was both overbroad and

that SENA had not located custodians with responsive records. SENA and

Plaintiffs agreed to meet and confer again by telephone on January 7, 2021. On

January 7, SENA emailed that it "still [had] not been able to locate a custodian that

would have access to any relevant documents," and asked to continue the meet and

confer. Plaintiffs' counsel inquired by what SENA had done to locate custodians with responsive documents, and which individuals SENA had contacted regarding responsive documents. SENA's representatives indicated in emails that it had "reached out to several different people internally to determine who may have been involved with Liberty Power," and that it did "not think it is necessary to identify who we have spoken to."

15.     On January 18, 2021, Plaintiffs met and conferred with SENA again. During the call, SENA indicated it had monthly financial reporting from Defendants and documents reflecting its due diligence with respect to Defendants dated from 2012 (rather than 2014, as the UCC filings indicate). SENA also indicated that it would contact its own custodians and Defendants later that day, and seek Defendants' permission before producing monthly financial reporting. Plaintiffs and SENA did not otherwise narrow their dispute, although Plaintiffs proposed sequencing and staging the production to specific categories of documents to mitigate SENA's objections.

16.     On January 19, 2021, Plaintiffs' counsel sent an email which stated in relevant part:

> Thanks for the call yesterday. I understand you planned to reach out to Liberty and others at Shell yesterday. Please let us know what you've learned.
>
> You indicated that Shell had performed a due diligence on Liberty at the outset of the relationship in 2012. As we have had more opportunity to consider the matter, it occurs to us this might be relevant to Liberty Power's state of mind with respect to its internal compliance policies going into the start of the class period (2014). Please let us know if Shell will provide its initial due diligence and any subsequent due diligence, as well as the monthly financial reports and funding requests we discussed. As I mentioned, it certainly warrants giving Shell a little bit more time to see if we can resolve this through the meet and confer process, by staging productions.

Plaintiffs' counsel shortly followed up with another email attaching a copy of the originating court's SPO. At the time of this Declaration, however, SENA has not responded to Plaintiffs' emails.

17.   **Certification:** Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 22, 2021        By:  s/Ethan Preston
                                    Ethan Preston

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL KATZ, an individual, on his own behalf and on behalf of all others similarly situated,<br>   *Plaintiff*,<br><br>v.<br><br>LIBERTY POWER CORP., LLC,<br>LIBERTY POWER HOLDINGS, LLC,<br>Delaware limited liability companies,<br>DAVID HERNANDEZ and ALBERTO<br>DAIRE, individuals,<br>   *Defendants*. | Case No. 1:18-cv-10506-ADB |

## <u>AGREED PROTECTIVE ORDER</u>

Plaintiff and Defendants Liberty Power Corp., LLC, and Liberty Power Holdings, LLC[1]

(collectively, the "Parties"), agree that certain information subject to discovery in this action may

contain private or personally sensitive information, trade secrets or other confidential,

proprietary and/or commercially-sensitive information.  The Parties ask the Court to enter this

protective order ("Protective Order" or "Order") to assist in the flow of discovery materials, to

facilitate the prompt resolution of disputes over confidentiality of discovery materials, to protect

and ensure the confidential treatment of information, and to ensure that the Parties are permitted

reasonably necessary uses of such materials in preparation for and in the conduct of trial. The

Parties acknowledge that this Order does not confer blanket protections on all disclosures or

responses to discovery and that the protection it affords from public disclosure and use extends

only to the limited information or items that are entitled to confidential treatment under the

---

[1] Individual Defendants David Hernandez and Alberto Daire were named only in Counts IV and V of the Complaint and are not Parties to this Protective Order.  The Parties expect to dismiss these Defendants voluntarily and without prejudice via stipulation. The two individual Defendants reserve their right to challenge this Court's jurisdiction over them.

applicable legal principles in this Protective Order. The Parties further acknowledge, as set forth in Section 17, below, that this Order does not entitle them to file confidential information under seal; Local Rule 7.2 sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the court to file material under seal.

## A.    <u>Scope and Definitions</u>

1.    This Protective Order applies to all information, documents, testimony and/or things subject to discovery in this action which contain private, personal, non-public, confidential information and/or trade secrets designated as Protected Material pursuant to the terms of this Order; as well as any secondary material, such as pleadings, written discovery, expert reports, notes, summaries or any other materials that contain, describe or reflect such information.

2.    In determining the scope of information that a Party may designate as its Protected Material, each Party acknowledges the importance of client access to information necessary to client decision-making in the prosecution or defense of litigation, and therefore agrees that designations of information as Protected Material and responses to requests to permit further disclosure of Protected Material shall be made in good faith and not (1) to impose burden or delay on an opposing Party, or (2) for tactical or other advantage in litigation.

3.    "Protected Material" means any information designated, in proper accordance with this Order, as "CONFIDENTIAL."

4.    "Discovery Material" means all items or information, including from a non-Party, regardless of the medium or manner generated, stored or maintained (including testimony, transcripts or tangible things) that are produced, disclosed or generated in connection with discovery in this matter, including documents, deposition testimony or discovery responses.

5.      "Producing Party" shall refer to any Party to this action, or to any Third-Party (whether voluntarily or pursuant to subpoena), who designates any Discovery Material as Protected Material.

6.      "Receiving Party" shall refer to any Party in this litigation who receives Protected Material from a Producing Party.

7.      "Outside Counsel" shall refer to (1) outside counsel who represent a Party in connection with this action, and (2) partners, associates, contract lawyers, employees, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation, including supporting personnel employed by the attorneys, such as paralegals, legal translators, legal secretaries, and legal clerks.

8.      "Designated Outside Consultant" shall refer to a person with specialized knowledge or experience in a matter pertinent to this litigation who has been retained by Outside Counsel to serve as an expert witness or as a litigation consultant in this matter, and who is not a current employee of a Party or of a competitor of a Party and who, at the time of retention, is not anticipated to become an employee of, or a non-litigation consultant of a Party or a competitor of a Party.

9.      "Professional Vendors" shall refer to persons or entities that provide litigation support services (*e.g.*, photocopying; videotaping; translating; designing and preparing exhibits, graphics, or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors who have been retained by Outside Counsel in this litigation, and who are not current employees of a Party or of a competitor of a Party and who, at the time of retention, are not anticipated to become employees of a Party or a competitor of a Party. This definition includes but is not limited to electronic discovery ("ESI") vendors, professional jury or

trial consultants retained in connection with this litigation and individuals retained by such

consultants to assist them in their work. Professional Vendors do not include consultants who fall

within the definition of Designated Outside Consultant.

10.     The Producing Party shall mark or label each document and thing that it deems to

be Protected Material with the following term: "CONFIDENTIAL" if it contains information

that is not readily available to the general public and that is sensitive and/or could cause

competitive harm if disclosed to an unauthorized person.  No item shall be deemed

"CONFIDENTIAL" if it is disclosed in a printed publication available to the public or trade, is

generally known to the public or , or is or comes to be known to a Party through means not

constituting breach of any proprietary or confidential relationship or obligation or breach of this

Protective Order.

11.     Each party or third party that designates material for protection under this

Protective Order must take care to limit such designations only to material that the party believes

in good faith meets the appropriate standards. The burden of proving the confidentiality of any

information designated for protection under this Protective Order shall remain with the Party or

Third Party making such designation.

**B.     Designation of Protected Material**

12.     Any Party to this litigation and any Third-Party covered by this Order shall have

the right to designate Protected Material subject to this Order any information, document, or

thing, or portion of any document or thing:  (a) that contains trade secrets, competitively

sensitive technical, marketing, financial, sales or other confidential business information, (b) that

contains private or confidential personal information, or (c) that contains information received in

confidence from Third Parties. Any Party to this litigation or any Third-Party covered by this

Order, who produces or discloses any Protected Material, including without limitation any

4

information, document, thing, interrogatory answer, admission, pleading, or testimony, shall

place on each page (or ESI slip sheet for native files or electronic file or medium containing

electronic file(s)) and each thing (including ESI slip sheets for native files, or electronic, optical,

magneto-optical, magnetic, etc. media) to which the designation applies the legend

"CONFIDENTIAL" in a manner that clearly identifies the Discovery Material designated as

Protected Material. If only a portion or portions of such information, document, answer,

admission, pleading, testimony, or other thing qualifies for protection, the Producing Party must

clearly identify the protected portion(s).

13.     All Protected Material shall be used by the Receiving Party solely for purposes of

prosecuting claims or defenses in this action, shall not be used by the Receiving Party for any

business, commercial, competitive, personal or other purpose, and shall not be disclosed by the

Receiving Party to anyone other than as provided in Paragraphs 15 and 16, unless and until the

restrictions herein are removed either by written agreement of counsel for the Producing Party or

by Order of the Court. .

14.     In the case of a non-party producing Materials containing Confidential

Information to a party to this agreement pursuant to a subpoena, a non-party document

production request, or otherwise, those Materials may be marked in accordance with this Order

and afforded all protections hereunder.

**C.     Access to Protected Material**

15.     Protected Material and the contents of Protected Material may be disclosed only

to the following individuals under the following conditions as provided in Paragraphs 15-16:

(a)     Outside Counsel;

(b)     Any party to this action and any employees (including legal department

individuals), officers, or directors of a corporate or individual party to this action who in-house

or outside counsel of the Receiving Party reasonably and in good faith believes need access to

Protected Material for purposes of the proceeding;

        (c)      Designated Outside Consultants retained by Outside Counsel for purposes

of this action, and only to the extent the Protected Material is germane to the expert's or

consultant's scope of engagement in this action, provided that the Outside Counsel that hired the

Designated Outside Consultant has signed "Protective Order Undertaking," attached hereto as

**Exhibit A**;

        (d)      Secretarial, paralegal, clerical, duplicating and data processing personnel

of individuals permitted to receive Protected Material;

        (e)      The Court and Court personnel;

        (f)      Any witness (during deposition or trial) may be shown or examined on

any Protected Material that the witness authored or received a copy of, or persons who have prior

knowledge (based on written documentation) of the contents of the Protected Material, or

persons who participated in events described or contained in the Protected Material, and the

witness has signed **Exhibit A**, or if the Producing Party consents to such disclosure; and

        (g)      Professional Vendors retained by or for the parties to assist in preparing

for pretrial discovery, trial and/or hearings including, but not limited to, court reporters,

translators, litigation support personnel, jury consultants, individuals to prepare demonstrative

and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, as well as

their staff, stenographic, and clerical employees whose duties and responsibilities require access

to such materials.

      16.     A Party may disclose Protected Material designated as "CONFIDENTIAL" only

to the individuals described in Paragraph 15(a), (b), (c), (d), (e), (f) and (g) above.

17.     Protected Material shall be used only by individuals permitted access to it under
Paragraphs 15 and 16 and then only for purposes of this action. Protected Material, copies
thereof, and the information contained therein, shall not be disclosed in any manner to any other
individual, until and unless (a) the Producing Party waives the claim of confidentiality, (b) as
otherwise provided in this Protective Order, or (c) the Court orders such disclosure.

(a)     A Party that seeks to file under seal any Protected Material must comply
with Local Rule 7.2. Protected Material may only be filed under seal pursuant to a court order
authorizing the sealing of the specific Protected Material at issue, regardless of whether it was
designated as "CONFIDENTIAL."   A Receiving Party may request to file Protected Material
under seal under Local Rule 7.2. The Receiving Party's motion shall identify the document or
portions thereof which contain the Protected Material and identify the Producing Party. The
Receiving Party's motion shall include the following language:

> This motion to file the referenced material under seal is made pursuant to Local
> Rule 7.2 and the stipulated protective order entered in this case. Under the
> stipulated protective order, the party which designated the referenced material as
> confidential has five (5) court days to file a declaration identifying all facts on
> which the Producing Party rests its contention that the Court should permit the
> Protected Material to be filed under seal, and any other support for such
> contention.

(b)     Within five (5) business days after the Receiving Party's request to file Protected
Material under seal, the Producing Party must file a declaration containing all facts on which the
Producing Party rests its contention that the Court should permit the Protected Material to be
filed under seal (and any other supporting material it wishes to file). If the Producing Party does
not file such declaration within five (5) business days, then the Receiving Party may file the
information in the public record unless otherwise instructed by the Court. If the Court denies the
Receiving Party's request to file Protected Material under seal, then the Receiving Party may file

the information in the public record unless otherwise instructed by the Court. Where a Receiving Party requested to file Protected Material under seal, the Protected Material shall be deemed timely filed with respect to any substantive deadline that may apply to such Protected Material when the Receiving Party files its request to seal the Protected Material by to such deadline.

18.     With respect to any depositions that involve a disclosure of Protected Material of a Party to this action, such Party shall have until ten (10) calendar days after receipt of the final deposition transcript within which to inform all other Parties that portions of the transcript are to be designated "CONFIDENTIAL" which period may be extended by agreement of the Parties. No such deposition transcript shall be disclosed to any individual other than the individuals described in Paragraphs 15-16 above and the deponent during these ten (10) calendar days after receiving the final deposition transcript from the court reporter, and no individual attending such a deposition shall disclose the contents of the deposition to any individual other than those described in Paragraphs 15 and 16 above during said ten (10) calendar days. Upon being informed that certain portions of a deposition are to be designated as "CONFIDENTIAL," all Parties shall immediately cause each copy of the transcript in its custody or control to be appropriately marked and limit disclosure of that transcript in accordance with Paragraphs 15-16. Alternatively, counsel appearing at the deposition, including counsel for the deponent (if a Third-Party), contemporaneously may designate during the course of a deposition certain testimony as "CONFIDENTIAL."

**D.     Objections**

19.     If counsel for a Party receiving documents or information designated as "CONFIDENTIAL" hereunder objects to such designation of any or all of such items, at any time subsequent to receipt of the production containing such Protected Material, the following procedure shall apply:

(a)     Counsel for the objecting Party shall serve on the Producing Party or Third-Party a written objection to such designation, which shall describe with particularity the documents or information in question and shall state the grounds for objection. Counsel for the Producing Party or Third-Party shall respond in writing to such objection within ten (10) calendar days, and shall state with particularity the grounds for asserting that the document or information is "CONFIDENTIAL." If the Producing Party or non-party makes a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute.

(b)     If a dispute as to a "CONFIDENTIAL" designation of Discovery Material cannot be resolved by agreement, the Producing Party shall file and serve a motion to sustain the designation under Local Rule 7.2 within 21 days of the initial notice of challenge or within 14 days of the Parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements above. Failure by the Producing Party to make such a motion within the time above shall automatically waive the confidentiality designation for each challenged designation. The burden of proof in any such challenge proceeding shall be on the Producing Party. The document or information that is the subject of the filing shall be treated as originally designated pending resolution of the dispute.

E.     **Use of Protected Material**

20.     Before being permitted access to Protected Material subject to this Protective Order, any individual or business entity described in Paragraph 15(c) shall sign the form of agreement annexed hereto as **Exhibit A**. The counsel of record for the party permitting disclosure shall retain the original of each agreement.

### F.    Inadvertent Disclosures

21.    If any person required to produce documents inadvertently produces any Protected Material without marking it with the appropriate legend, the Producing Party may give written notice to the Receiving Party or Parties, enclosing appropriately stamped copies of the Protected Material, that the document, thing, or response is deemed Protected Material and should be treated as such in accordance with the provisions of this Protective Order.

22.    If a document or thing is not designated as containing Protected Material and has been used as an exhibit to a pleading filed with the Court, identified for use at trial, or otherwise disclosed to the Court, the Producing Party shall have fourteen (14) calendar days from the date of disclosure to provide notice of its failure to designate the document or thing as Protected Material.

23.    The inadvertent disclosure of protected communications or information, including Protected Materials, shall not constitute a waiver of any privilege or other protection (including work product) for the protected communications or information or the subject matter of the protected communications or information if the Producing Party took reasonable steps to prevent disclosure and also took reasonable steps to rectify the error in the event of an inadvertent disclosure. The parties agree that any communications that occur after the commencement of the present litigation, shall not be required to be identified on a privilege log absent good cause.

### G.    Miscellaneous

24.    No information that is in the public domain or which is already known by the Receiving Party through proper means or which is or becomes available to a party from a source other than the party asserting confidentiality, rightfully in possession of such information on a non-confidential basis, shall be deemed or considered to be Protected Material under this Order.

25.    This Order shall not deprive any party of its right to object to discovery by any other party or on any otherwise permitted ground. Further, this Order is being entered without prejudice to the right of any Party to move the Court for modification or for relief from any of its terms.

26.    If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that party must:

(a)    Promptly notify in writing the Producing Party. Such notification shall include a copy of the subpoena or court order;

(b)    Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order. Such notification shall include a copy of this Order; and

(c)    Cooperate with respect to all reasonable procedures sought to be pursued by the Producing Party whose Protected Material may be affected; and

27.    If the Producing Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued or a court of competent jurisdiction adjudicating such a protective order, unless the Party has obtained the Producing Party's written permission. The Producing Party shall bear the burden and expense of seeking protection in that court of its Protected Material.

28.    The terms of this Order are applicable to information produced by a non-party in this action and designated as "CONFIDENTIAL."  Such information produced by non-parties in connection with this litigation is protected by the remedies and relief provided by this Order.

Nothing in these provisions should be construed as prohibiting a non-party from seeking additional protections.

29.     If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Producing Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the Undertaking that is attached hereto as **Exhibit A**.

30.     Unless otherwise ordered or agreed in writing, within sixty (60) days upon final conclusion of this litigation, including the exhaustion of all appeals, each Party or other individual subject to the terms hereof shall be under an obligation to assemble and either destroy or return to the originating source all originals and unmarked copies of documents and things containing Protected Material; and certify such destruction in writing to the Producing Party; provided, however, that counsel may retain complete copies of all transcripts, emails, work product  and pleadings including any exhibits attached thereto for archival purposes, subject to the provisions of this Order. To the extent a Party requests the return of Protected Material from the Court after the final conclusion of the litigation, including the exhaustion of all appeals therefrom and all related proceedings, the Party shall file a motion seeking such relief.

31.     The parties reserve the right to seek modification of this Protective Order from the Court at any time for good cause. The parties agree to meet and confer prior to seeking to modify this Protective Order for any reason.

32.     Nothing shall prevent disclosure beyond the terms of this Order if the Producing

Party consents to such disclosure, or if the Court, after notice to all parties, orders such

disclosure.

33.     This Protective Order shall survive termination of this action.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: May 24, 2018                         Dated: May 24, 2018

/s/Ethan Preston                            /s/Jeffrey P. Brundage
John L. Fink, Esq.                          Craig R. Waksler (B.B.O. # 566087)
jfink@westborolawyer.com                    cwaksler@eckertseamans.com
FINK LAW OFFICE                             Pamela C. Rutkowski (B.B.O. # 681618)
18 Lyman St., Suite 208                     prutkowski@eckertseamans.com
J&N Professional Building                   ECKERT SEAMANS CHERIN
Westborough, Massachusetts  01581                    & MELLOTT, LLC
Telephone:  (508) 433-0529                  Two International Place
                                            16th Floor
David C. Parisi                             Boston, Massachusetts 02110
dcparisi@parisihavens.com                   Telephone: (617) 342-6800
Suzanne Havens Beckman                      Facsimile: (617) 342-6899
shavens@parisihavens.com
PARISI & HAVENS LLP                         Charles A. Zdebski (pro hac vice )
212 Marine Street, Unit 100                 czdebski@eckertseamans.com
Santa Monica, California 90405              Jeffrey P. Brundage (pro hac vice)
Telephone: (818) 990-1299                   jbrundage@eckertseamans.com
Facsimile: (818) 501-7852                   ECKERT SEAMANS CHERIN
                                                     & MELLOTT, LLC
                                               1717 Pennsylvania Ave, NW, Suite 1200
Yitzchak H. Lieberman                       Washington, D.C. 20006
ylieberman@parasmoliebermanlaw.com          Telephone: (202) 659-6676
Grace E. Parasmo                            Facsimile: (202) 659-6676
gparasmo@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Boulevard, Suite 505         *Counsel for Defendants Liberty Power Corp.,*
Los Angeles, California 90046               *LLC ,and Liberty Power Holdings, LLC*
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

Ethan Preston
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204

Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Counsel for Samuel Katz, on his own behalf
and on behalf of all others similarly situated*

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated:  May 25, 2018             /s/ Allison D. Burroughs
                                   Allison D. Burroughs
                                   United States District Judge

**CERTIFICATE OF SERVICE**

I, Ethan Preston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: May 24, 2018                        By: /s/Ethan Preston
                                   Ethan Preston

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL KATZ, an individual, on his own behalf and on behalf of all others similarly situated,<br>     *Plaintiff*,<br><br>v.<br><br>LIBERTY POWER CORP., LLC,<br>LIBERTY POWER HOLDINGS, LLC,<br>Delaware limited liability companies,<br>DAVID HERNANDEZ and ALBERTO<br>DAIRE, individuals,<br>     *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) )     Case No. 1:18-cv-10506-ADB |

## PROTECTIVE ORDER UNDERTAKING

I,_____, being duly sworn, state that:

1.     My address is _____

2.     My present employer is_____ and

the address of my present employment is _____.

3.     I have carefully read and understood the "Stipulated Protective Order"

("Protective Order") in the above-captioned action (the "Action"), am familiar with the terms

thereof, will comply with all provisions of the Protective Order, and agree to be bound by the

terms of the Protective Order in this case.

4.     I will hold in confidence and not disclose to anyone not qualified under the

Protective Order any Protected Material, including "CONFIDENTIAL," or any words, notes,

summaries, abstracts, or indices of Protected Material disclosed to me.

5.      I will limit use of Protected Material disclosed to me solely for purpose of this action.

6.      I understand that I am to retain all copies of the materials that I receive which have been designated as containing or reflecting Protected Material in an electronic format, repository and/or database, or a physical container, cabinet, drawer, room or other safe place in a manner consistent with the Protective Order. I understand that all copies of any such materials are to remain in my custody until the conclusion of this Action or the completion of my assigned duties, whereupon the copies are to be destroyed, returned to the Producing Party, or returned to the counsel for the Party for whom I was employed or retained for that Party's return of Protected Material to the Producing Party or destruction of the same.

7.      Such return or destruction shall not relieve me from the obligations imposed upon me by said Protective Order. I further agree to notify any support personnel (such as paralegals, administrative assistants, secretaries, clerical and administrative staff), who are necessary to assist me of, the terms of the Protective Order, and of their obligation not to reveal any Protected Material to anyone not authorized to receive such information pursuant to the terms of the Protective Order.

8.      I understand that I shall be subject to the jurisdiction of the District Court for the District of Massachusetts in any proceeding relating to my performance under, compliance with, or violation of the Protective Order only, and that I am not waiving any objections to jurisdiction on any claims other than matters relating specifically to performance under, compliance with, or violation of the Protective Order.

Case 1:18-cv-10506-ADB Document 20 Filed 05/25/18 Page 18 of 18

 

 

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____            _____

                                                                    Name:_____

                                                                    Title: _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

*DELAWARE DEPARTMENT OF STATE*
*U.C.C. FILING SECTION*
*FILED 12:48 PM 02/18/2014*
*INITIAL FILING # 2014 0624312*

*SRV: 140189416*

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Shell Energy North America (US), L.P.
1000 Main Street
Houston, Texas 77002

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Liberty Power Holdings LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1901 W. Cypress Creek Road, Suite 600 | Fort Lauderdale | FL | 33309 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Shell Energy North America (US), L.P. | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3a. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1000 Main Street | Houston | TX | 77002 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
   See Attachment A.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:   6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

42067119

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)         International Association of Commercial Administrators (IACA)

Attachment A
To
UCC Financing Statement
Naming
Liberty Power Holdings LLC, as Debtor
And
Shell Energy North America (US), L.P., as Secured Party

Capitalized terms not otherwise defined herein shall have the meaning set forth in the Security Agreement entered into by the Debtor and the Secured Party, as amended, modified, supplemented and/or restated from time to time.

Debtor hereby grants to Secured Party a first priority security interest in, general lien upon, and right of set-off against, Debtor's right, title and interest in and to the following properties, assets and rights of Debtor, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (the "Collateral"):

(i)     all personal property of every kind and nature including, without limitation all goods (including inventory, equipment and any accessions thereto);

(ii)    Instruments (including Promissory Notes);

(iii)   Documents;

(iv)    Accounts (including health-care-insurance receivables);

(v)     Investment Property;

(vi)    Chattel Paper (whether tangible or electronic);

(vii)   Deposit Accounts;

(viii)  Letter-of-credit rights (whether or not the letter of credit is evidenced by a writing);

(ix)    Commercial tort claims (the Shell Parties acknowledge that the attachment of its security interest in any commercial tort claims as original collateral is subject to Debtor's compliance with Section 4.7 of the Security Agreement);

(x)     General Intangibles (including all payment intangibles and, to the extent assignable, licenses); and

(xi)    Supporting obligations and rights ancillary to, or arising in any way in connection with any of the foregoing, including security, any other contracts, contract rights or rights to the payment of money, insurance claims and proceeds.

The term "Collateral" does not include and expressly excludes any POR Collateral.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27 EXHIBIT 3
28

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Massachusetts

| | | |
|---|---|---|
| SAMUEL KATZ, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  No. 1:18-cv-10506 |
| LIBERTY POWER CORP., LLC, LIBERTY POWER HOLDINGS, LLC, DAVID HERNANDEZ, et al | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Shell Energy North America (US), L.P., 4445 Eastgate Mall, San Diego, California 92121
818 West 8th Street, Suite 930, Los Angeles, California 90017

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached production schedule

| Place: Golden & Cardona-Loya, LLP<br>3130 Bonita Road, Suite 200B<br>Chula Vista, California 91910 | Date and Time:<br><br>12/16/2020 3:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    11/30/2020

*CLERK OF COURT*

OR _____

_____          _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Plaintiff Sam Katz _____, who issues or requests this subpoena, are:

Ethan Preston, Preston Law Offices, 4054 McKinney Avenue, Ste 310, Dallas, TX 75204, (972) 564-8340, ep@eplaw.us

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. No. 1:18-cv-10506

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SAMUEL KATZ and LYNNE RHODES, individually, and on their own behalf and on behalf of all others similarly situated,

           Plaintiffs,

    v.

LIBERTY POWER CORP., LLC, LIBERTY POWER HOLDINGS, LLC, Delaware limited liability companies,

           Defendants.

LIBERTY POWER CORP., LLC, and LIBERTY POWER HOLDINGS, LLC,

           Third-Party Plaintiffs,

    v.

MEZZI MARKETING, LLC,

           Third-Party Defendant.

No. 1:18-cv-10506

**PRESERVATION INSTRUCTIONS AND PRODUCTION SCHEDULE FOR SUBPOENA TO SHELL ENERGY NORTH AMERICA (US), LP**

## PRESERVATION AND PRODUCTION INSTRUCTIONS

The attached subpoena places Shell Energy North America (US), LP ("Shell") on notice that it has a duty to preserve evidence relevant to the above-captioned case, including in particular all communications, emails, financial records, and other documents concerning any transactions with Liberty Power Corp., LLC and/or Liberty Power Holdings, LLC, or any affiliates since 2014. Failure to obey a subpoena could render Shell liable to sanctions for contempt of court. *See* Fed. R. Civ. P. 45(e). Federal law provides criminal penalties for any person who "corruptly ... obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice[.]" 18 U.S.C. § 1503(a). *See also* 18 U.S.C. § 401(3) (court may punish "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command" by "fine or imprisonment, or both, at its discretion"). Contact the counsel identified above if

there are any questions about the subpoena or your obligations thereto.

The duty to preserve created by a subpoena extends to documents and other evidence within Shell's "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(iii). Shell has "control" over evidence or documents where it has the right to obtain the documents upon demand.

It is likely that most of the documents requested in this subpoena are electronic. Effective preservation of documents requires you to identify and inventory the physical media where requested electronic documents may be found. Such physical media can take any number of forms, and the following list is provided for illustrative purposes: (1) hard drives attached to personal computers, laptops, and servers; (2) external, networked or detached drives; (3) archive or backup tapes; (4) portable drives (Flash USB drives and external hard drives connected via USB or FireWire); (5) optical media (i.e., CDs and DVDs); (6) floppy discs; (7) portable devices including wireless devices and other PDAs; and (8) volatile memory (i.e., RAM) of the foregoing devices. Document custodians should be alerted that relevant documents may be found in any of the foregoing media, and that a single item of computer media may contain multiple file systems.

## PRODUCTION SCHEDULE

**Instructions:**

Shell is required to respond to the attached subpoena in a manner that is consistent with Federal Rule 45. The following instructions do not limit the scope of Shell's obligations under the Rule 45, but are merely meant to remind or inform it of these duties and to provide examples of compliance with those duties.

### A.    Definitions

With respect to this Subpoena,

1.  The term "document" means any information that is fixed in a tangible form and stored in a medium from which it can be retrieved and examined. This definition includes, but is not limited to, emails, computer files in every kind and format, as well as writings of every kind, any correspondence, books, records, logs, reports, memoranda, abstracts, advertisements, agreements, appointment records, audio recordings (whether transcribed or not), balance sheets, bills, books of account, certificates, communications, checks, compilations, papers, transcriptions or summaries of conversations, diaries, drafts, disks, notes, notations, plans and specifications, graphs, tapes, slides, computer programs, computer print-outs, entries, estimates, expense records, financial analyses, financial statements, forms, handbooks, telegrams, income statements, indices, intra-office and inter-office communications, invoices, itemizations, journals, letters, meeting reports, minutes, notes, payroll records, photocopies, photographs, press releases, prospectuses, publications, receipts, records of account, reports, resolutions, statements, statistical records, studies, summaries, system analyses, and time records.

2.  The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make requests inclusive rather than exclusive.

3.  The term "concerning" means referring to, describing, evidencing, or constituting.

4.  The term "Liberty Power" means Liberty Power Corp., LLC and/or Liberty Power Holdings, LLC as well as their principals, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of them, and/or any predecessor, successor, affiliate, subsidiary, parent or related corporation, partnership or entity, and/or anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

**B.    Scope**

In Shell's response to the Subpoena, it shall produce (in addition to all documents in its possession or custody) all documents which it has a right to demand. By way of example, but without limitation, it shall produce all responsive documents found in the possession or custody of its agents, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of it, and/or any predecessor, successor, affiliate, subsidiary, parent or related corporation, partnership or entity, and/or anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

**C.    Production of Electronic Documents**

Shell shall produce any electronic documents requested herein in "native format," meaning the format in which they are ordinarily used or accessed by it outside of litigation. Native format explicitly includes application-specific metadata (like File Properties for Shell Word .doc files) and file system metadata (like the date of creation and modification and file permissions stored in an NTFS-formatted file system). In particular, Shell shall produce electronic documents with their original filepath.

File system metadata can be preserved by archiving responsive electronic documents in a .tar file, a .zip file, or an .iso file. These archival formats can simplify preservation of time-related metadata. These archival formats can also be used to simplify preservation of file systems' overall directory structure (and thereby responsive documents' filepath) by initially including the file systems' root directory in the archive, and then manually excluding all non-responsive directories and files. If it prefers, Shell may use a .tar, .zip, .iso, or similar archival file format to produce all responsive documents on a particular file system. (The documents contained within the archive file should still be produced in their native format.)

However, where responsive electronic documents are in a file format that is not accessible by mass-market software, Shell shall produce the file in a format accessible by mass-market software. If possible, the documents should be translated in a manner that preserves the original documents' metadata. Typically, data in databases should be produced in plain text (i.e., ASCII or Unicode) format, with appropriate delimiters to preserve differentiation between different data fields (which may include tabs or commas), and clear identification of such data fields. Please coordinate with Plaintiffs' counsel early on so that the logistics of translating such electronic documents can be worked out in advance of the production deadline. If possible, the documents should be translated in manner that preserves the original documents' metadata.

Conversion of documents from other formats to a .tiff or .pdf format is not acceptable for a number of reasons. **DO NOT CONVERT DATA STORED IN A DATABASE FORMAT TO PDF FORMAT: YOU WILL BE REQUIRED TO REPRODUCE THAT DATA.**

There are a variety of ways to authenticate electronic documents. For instance, Shell may wish to assign a Bates number or calculate a hash value for each electronic document produced, or each archival file, or even each CD or hard drive. A hash is a mathematical or cryptographic "signature" of a file, and can be used to authenticate documents with only minimal time and resources. In either event, Shell can ensure the integrity of the electronic documents you produce by including a cryptographic hash value for each document (or each archive). These hash values can be used to label particular productions, and to ensure that the productions are not altered.

### D.    Manner of Production

Shell shall organize the requested documents either "as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand." Fed. R. Civ. P. 45(d)(1)(A). If Shell does not organize and label produced documents, it must demonstrate that it produced the documents as they are kept in the usual course of business. Shell may be obliged to substantiate that the documents it produces are produced as they are kept in the ordinary course of business.

Shell should produce documents on optical media (CDs or DVDs) or on a portable hard drive. Ideally, it should produce documents on read-only optical media (such as CDs or DVDs). Shell should produce documents within an image file on a hard drive where production on optical media is impractical (because of storage limitations) or the translation to an optical media file system materially alters documents.

If Shell has paper documents without any electronic originals, those documents should be

scanned into a .pdf format in a manner that ensures that they are legible and searchable. Please coordinate with Plaintiff's counsel early on, so that the logistics of scanning such paper documents in can be worked out in advance of the production deadline. For environmental and logistical reasons, documents that cannot be scanned should be produced on paper only as a last resort.

### E.    Objections

Any objections to the Subpoena must conform to Rule 45(d)(2)(B). Any grounds for objection that is not stated in a timely objection are waived. If documents are withheld under a claim of privilege or protection as trial-preparation material, Shell shall make the claim expressly and shall describe the nature of the withheld documents (and, if applicable, the external circumstances which it claims support the application of such privilege) in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the applicability of the privilege or protection. *Cf.* Fed. R. Civ. P. 45(e)(2). A privilege log or equivalent should be prepared with your response to the Subpoena, or an extension should negotiated beforehand.

Defendants or other third parties may serve you with objections to your production in response to this subpoena. These objections do not require or permit Shell to delay your production in response to this subpoena. Defendants and other third parties must file a motion for protective order or a motion to quash the subpoena if they wish to prevent your production, and they have limited standing to do so. *Cf.* Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(d)(3).

### Schedule of Documents to be Produced by Shell Energy North America (US), LP:

1.    All communications with Liberty Power since March 16, 2014.

2.    All documents which Shell relied on or reviewed in preparation for any transaction(s) (including any loan or secured interest) with Liberty Power which

was in effect on or after March 16, 2014.

3.     All documents concerning any communication regarding the case captioned above (including this Subpoena) between Shell and another person (excluding Plaintiffs and their attorneys).

4.     All documents concerning any incident in which any document which would be or would have been responsive to this subpoena was destroyed, delinked, de-referenced, deleted, and/or access to such document was lost (including by way of example but not limited to any document retention policy under which any document which would be or would have been responsive to this subpoena was destroyed, delinked, de-referenced, deleted, and/or access to such document was lost).

5.     To the extent that you intend to charge Plaintiff any cost or expense for complying with this subpoena, all documents on which you may rely to support such cost or expense.

6.     To the extent that you object to this subpoena, every document on which you may rely to support such objection in any dispute regarding this subpoena.

Dated: November 30, 2020   By: _____ s/Ethan Preston _____
                                    David C. Parisi
                                    dcparisi@parisihavens.com
                                    Suzanne Havens Beckman
                                    shavens@parisihavens.com
                                    **PARISI & HAVENS LLP**
                                    100 Pine Street, Suite 1250
                                    San Francisco, California 94111
                                    Telephone: (818) 990-1299
                                    Facsimile: (818) 501-7852

                                    Yitzchak H. Lieberman
                                    ylieberman@parasmoliebermanlaw.com
                                    Grace E. Parasmo
                                    gparasmo@parasmoliebermanlaw.com
                                    **PARASMO LIEBERMAN LAW**
                                    7400 Hollywood Boulevard, Suite 505
                                    Los Angeles, California 90046
                                    Telephone: (917) 657-6857
                                    Facsimile: (877) 501-3346

                                    *Attorneys for Plaintiffs Samuel Katz and Lynne*
                                    *Rhodes, on their own behalf, and behalf of all*
                                    *others similarly situated*

## CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C. § 1746, I hereby certify that a copy of the foregoing document was this date served upon the parties below under Fed. R. Civ. P. 5(b) by causing a copy of the foregoing to be placed in the United States Mail, postage prepaid, and sent to their last known address as follows:

Craig R. Waksler
ECKERT SEAMANS CHERIN & MELLOTT, LLC
2 International Place, 16th Floor
Boston, Massachusetts 02210

Jeffrey P. Brundage
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, NW, 12th Floor
Washington, District of Columbia 20006

*Attorneys for Defendants*

Dated: November 30, 2020    By: _____    s/Ethan Preston
                                    Ethan Preston
                                    **PRESTON LAW OFFICES**
                                    4054 McKinney Avenue, Suite 310
                                    Dallas, Texas 75204
                                    Telephone: (972) 564-8340
                                    Facsimile: (866) 509-1197
                                    ep@eplaw.us

                                    *Attorneys for Plaintiffs Samuel Katz and Lynne*
                                    *Rhodes, on their own behalf, and behalf of all*
                                    *others similarly situated*

1  Ethan Preston, 263295
2  (972)564-8340
   Preston Law Offices
3  4054 McKinney, Suite 310
   Dallas, TX 75204
4  Representing: Plaintiff                          File No.

5

6

7

8                  United States District Court, District of Massachusetts

9                       One Legal National Fulfillment Center

10

11

12  Samuel Katz, et al.                              Case No. No. 1:18-cv-10506
13                                          )
                                            )        Proof of Service of:
14        Plaintiff/Petitioner             )
                                            )            Subpoena to Produce Documents, Information, or
15             vs.                          )            Objects or to Permit Inspection of Premises in a
                                            )            Civil Action
16  Liberty Power Corp., LLC; et al.       )
                                            )
17        Defendant/Respondent             )
                                            )
18  _____)              Service on:
19                                                       Shell Energy North America (US), L.P.
20

21

22                                                   Hearing Date:
23                                                   Hearing Time:
                                                     Div/Dept:
24

25

26

27

28

                              PROOF OF SERVICE

OL#15536530

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):*

Ethan Preston, 263295
Preston Law Offices
4054 McKinney, Suite 310
Dallas, TX 75204

TELEPHONE NO.: (972)564-8340

FOR COURT USE ONLY

Ref. No. or File No.

ATTORNEY FOR *(Name):* Plaintiff

Insert name of court, judicial district or branch court, if any:
United States District Court, District of Massachusetts-One Legal National Fulfillment Center Branch

Washington, MA NA

PLAINTIFF:

Samuel Katz, et al.

DEFENDANT:

Liberty Power Corp., LLC; et al.

| PROOF OF SERVICE | DATE: | TIME: | DEPT/DIV: | CASE NUMBER: |
|---|---|---|---|---|
| | | | | No. 1:18-cv-10506 |

**BY FAX**

1. At the time of service I was a citizen of the United States, over 18 years of age and not a party to this action, and I served copies of:
Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

2. Person Served (name):   Shell Energy North America (US), L.P. by serving CT Corp - Albert Demonte  - Person Authorized to Accept

3. Date and Time of Delivery:   12/01/2020         1:25PM

4. Address where served:   818 West Seventh Street, Suite 930

Los Angeles, CA 90017

5. I received the above document(s) for service on (date):   11/30/2020

6. Witness Fees:   Witness fees and mileage both ways were not demanded or paid.

Fee for service (including Witness Fees if paid) $:  40.00

Registered California process server.
County: Los Angeles
Registration No.: 2019217220
Jessica Brown
One Legal - P-000618-Sonoma
1400 North McDowell Blvd, Ste 300
Petaluma, CA 94954
415-491-0606

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 12/01/2020 at Petaluma, California.

Jessica Brown

OL# 15536530

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

Exhibits to Preston Declaration

Privileged and Confidential



December 15, 2020

**Taylor Moore**
Shell Oil Company
Legal Services
150 N. Dairy Ashford Road
F 0638F
Houston, TX 77079
United States of America
**Tel:** +1-832-337 0905
**Fax:** +1-832-337 3553
**Email:** taylor.t.moore@shell.com
**Internet:** http://www.shell.com

*__Via Electronic Mail__*

Ethan Preston
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197
ep@eplaw.us

Re:     Subpoena - In the matter of *Samuel Katz and Lynn Rhodes v. Liberty Power Corp., et al.*:
        Shell Energy North America (US), LP
        (SOC#: 2020-20230)

Dear Counsel:

Shell Energy North America (US), LP ("Shell") is in receipt of the enclosed subpoena served on it in the *Samuel Katz and Lynn Rhodes v. Liberty Power Corp., et al.* matter on December 1, 2020. Shell is a non-party to this lawsuit. This subpoena requires compliance by December 16, 2020. In an effort to cooperate and coordinate with counsel, Shell has made multiple attempts to email and call counsel with no response. Shell is still willing to work with counsel regarding this subpoena, but, for the purposes of complying with the subpoena's deadline, Shell serves the following responses and objections to the subpoena.

**Response to Request No.1:** Shell objects to this request as overly broad and unduly burdensome. Shell objects to this request as it seeks information not relevant to the subject matter of the litigation. Shell objects to this request to the extent that it seeks information not in Shell's possession, custody, or control. Shell objects to this request to the extent that it seeks information covered by the attorney client privilege, work product doctrine and/or any other applicable privileges. As stated above, Shell has attempted to confer with the subpoenaing party to further understand what is being requested but has not received a response. Shell reserves the right to supplement this subpoena should relevant, responsive, and non-privileged information become available.

**Response to Request No. 2:** Shell objects to this request as overly broad and unduly burdensome. Shell objects to this request as it seeks information not relevant to the subject matter of the litigation. Shell objects to this request to the extent that it seeks information not in Shell's possession, custody, or control. Shell objects to this request to the extent that it seeks information covered by the attorney client privilege, work product doctrine and/or any other applicable privileges. As stated above, Shell has attempted to confer with the subpoenaing party to further understand what is being requested but has not received a response. Shell reserves the right to supplement this subpoena should relevant, responsive, and non-privileged information become available.

December 15, 2020
Page 2

**Response to Request No. 3:** Shell objects to this request as overly broad and unduly burdensome. Shell objects to this request as it seeks information not relevant to the subject matter of the litigation. Shell objects to this request to the extent that it seeks information not in Shell's possession, custody, or control. Shell objects to this request to the extent that it seeks information covered by the attorney client privilege, work product doctrine and/or any other applicable privileges. As stated above, Shell has attempted to confer with the subpoenaing party to further understand what is being requested but has not received a response. Shell reserves the right to supplement this subpoena should relevant, responsive, and non-privileged information become available.

**Response to Request No. 4:** Shell objects to this request as overly broad and unduly burdensome. Shell objects to this request as it seeks information not relevant to the subject matter of the litigation. Shell objects to this request to the extent that it seeks information not in Shell's possession, custody, or control. Shell objects to this request to the extent that it seeks information covered by the attorney client privilege, work product doctrine and/or any other applicable privileges. As stated above, Shell has attempted to confer with the subpoenaing party to further understand what is being requested but has not received a response. Shell reserves the right to supplement this subpoena should relevant, responsive, and non-privileged information become available.

**Response to Request No. 5:** Shell objects to this request as overly broad and unduly burdensome. Shell objects to this request as it seeks information not relevant to the subject matter of the litigation. Shell objects to this request to the extent that it seeks information covered by the attorney client privilege, work product doctrine and/or any other applicable privileges. As stated above, Shell has attempted to confer with the subpoenaing party to further understand what is being requested but has not received a response. Shell reserves the right to supplement this subpoena should relevant, responsive, and non-privileged information become available.

**Response to Request No. 6:** Shell objects to this request as overly broad and unduly burdensome. Shell objects to this request as it seeks information not relevant to the subject matter of the litigation. Shell objects to this request to the extent that it seeks information covered by the attorney client privilege, work product doctrine and/or any other applicable privileges. As stated above, Shell has attempted to confer with the subpoenaing party to further understand what is being requested but has not received a response. Shell reserves the right to supplement this subpoena should relevant, responsive, and non-privileged information become available.

Very truly yours,

*Taylor Moore*

Taylor Moore
Legal Counsel, Shell Global Litigation

TM/vv
Enclosed: Subpoena to Shell Energy North America (US) LP

 **CT Corporation**

**Service of Process Transmittal**
12/01/2020
CT Log Number 538677575

**TO:** Robin Johnson
Shell Oil Company
150 N DAIRY ASHFORD RD
HOUSTON, TX 77079-1115

**RE:** **Process Served in California**

**FOR:** Shell Energy North America (US), L.P.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | SAMUEL KATZ, Pltf. vs. LIBERTY POWER CORP., LLC, et al., Dfts. // To: Shell Energy North America (US), L.P. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 118CV10506 |
| **NATURE OF ACTION:** | Subpoena - Business records |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/01/2020 at 02:11 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/02/2020, Expected Purge Date: 12/07/2020<br><br>Image SOP<br><br>Email Notification,  Rachel Marshall  shloil-service-of-process@shell.com<br><br>Email Notification,  Robin Johnson  robin.l.johnson@shell.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>1999 Bryan St Ste 900<br>Dallas, TX 75201-3140 |
| **For Questions:** | 877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



# PROCESS SERVER DELIVERY DETAILS

**Date:**              Tue, Dec 1, 2020

**Server Name:**       Jimmy Lizama

| Entity Served | SHELL ENERGY NORTH AMERICA (US), L.P. |
|---|---|
| Agent Name | C T CORPORATION SYSTEM (C0168406) |
| Case Number | 1:18-cv-10506 |
| Jurisdiction | CA |



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 5

**PRESTON**/LAW OFFICES

4054 McKinney Avenue, Suite 310 / Dallas, Texas 75204
(972) 564-8340 / (866) 509-1197 / ep@eplaw.us

*Via email and facsimile and mail*

Taylor Moore
Shell Oil Company
Legal Services
150 North Dairy Ashford Road
F 0638F
Houston, Texas 77079                                      December 16, 2020

> Re:   Shell Energy North America (US), LP (SOC#: 2020-20230); *Katz v. Liberty Power Corp., LLC, Liberty Power Holdings, LLC*, No. 1:18-cv-10506, pending in the United States District Court for the District of Massachusetts

Dear Ms. Moore,

This law firm represents the Plaintiffs in the above-captioned case. On December 1, 2020, Plaintiffs served a subpoena on Shell Energy North America (US), LP ("Shell") seeking documents regarding Liberty Power Corp., LLC and/or Liberty Power Holdings, LLC ("Defendants") and Shell's relationship with Defendants.

In its December 15, 2020 correspondence, Shell objected and indicated Plaintiffs' counsel had not responded to Shell's communications. This is incorrect: Plaintiffs' counsel emailed responses to Shell on December 7, December 11, and December 14. Please see the attached. Please also check the spam folder for your email system for email from Plaintiffs' counsel. Plaintiffs request to meet and confer with Shell regarding its response. Please advise when Shell can meet and confer by December 18.

## Shell's Generic Objections Frustrate Meet and Confer Process

Shell's objections are generic, which complicates the meet and confer process. We recognize Shell is a third party and does not have a stake in the litigation, and our preference is to offer Shell reasonable and appropriate accommodations that do not prejudice Plaintiffs' litigation interests. However, the vague nature of Shell's objections makes it more difficult to propose appropriate compromises. The Federal Rules require specific objections for a reason:

> Objections that fail to provide an appropriate factual basis make it difficult for the parties to even informally discuss any alleged defects in a discovery request or response in hope of fixing the defects. . . . This inhibits the parties' abilities to resolve discovery disputes on their

Taylor Moore
December 16, 2020
Page 2 of 5

own, as intended by the Rules. . . .

*Chevron Midstream Pipelines LLC v. Settoon Towing LLC*, No. 13-2809, 2015 WL 269051, *4 (E.D. La. Jan. 21, 2015). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condominium Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (applied in *Makaeff v. Trump Univ., LLC*, No. 10-0940, 2013 WL 990918, *6-7 (S.D. Cal. Mar. 12, 2013) to generic objections to subpoenas). *See also Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 543-44 (N.D. Cal. 2009); *In re Coan*, No. 06-80350, 2007 WL 128010, *5 (N.D. Cal. Jan. 12, 2007) ("party objecting to discovery requests must state specific facts in support of the objection" citing Fed. R. Civ. P. 34(b); subpoenaed witnesses' "general objection" to subpoena overrruled where they "did not identify how each discovery request is overly broad, burdensome, or oppressive").

We are better able to discuss Shell's objections if we understand what responsive documents exist, and the available methods and means of collection, so Plaintiffs can make an informed decision about how to narrow the subpoena.

**Shell's Objection of Undue Burden Lacks Merit**

Shell's objection of undue burden lacks merit. *See Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 619 (C.D. Cal. 2007) ("no merit to . . . general or boilerplate objections such as 'overly broad'"; citing *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006)). "[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." *A. Farber*, 234 F.R.D. at 188 (citing, e.g., *McLeod, Alexander, Powel & Apffel, P.C v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990) for proposition that objections that discovery is "overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable"). *See also United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007) (objection stating "[o]verbroad, unduly burdensome, unduly redundant to other discovery, oppressive" were meritless and improper "boilerplate objections"). "[A]n objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010) (citations; punctuation omitted). Shell's objections offer no such substantiation.

The same analysis applies in the subpoena context. "A party [objecting to a subpoena] on the grounds of undue burden [under Rule 45] bears the burden of proof. . . . [That] burden is a heavy one," and cannot be sustained without "evidence

Taylor Moore
December 16, 2020
Page 3 of 5

pertaining to the time, cost, or inconvenience entailed in responding to [a subpoena.]" *In re Yassai*, 225 B.R. 478, 483-84 (Bankr. C.D. Cal. 1998) (multiple citations omitted). *See also In re Subpoena Duces Tecum*, 461 B.R. 823, 831 (Bankr. C.D. Cal. 2011) (conclusory statement [that subpoena was "overly broad and unduly burdensome"], without an elaboration, is insufficient to defeat [subpoena]"); *Ferrell v. IBP, Inc.*, No. 98-4047, 2000 WL 34032907, at *1 (N.D. Iowa Apr. 28, 2000) ("burden to prove that a subpoena is unreasonable or oppressive rests upon the party seeking to quash or modify; "[m]ere assertions that compliance would be burdensome are insufficient to satisfy such a burden"; citations omitted).

**The Subpoena Seeks Relevant Information**

Plaintiffs seek information about Defendants, their finances, their representations about the underlying litigation, and their relationship with Shell. The Court has previously ordered Defendants to produce related documents; Plaintiffs have moved to enforce the Court's order because of deficiencies in Defendants' production. (ECF No. 234 at 8-9, 12, 13-15; ECF No. 242.) Shell's generic objection to relevancy lacks merit: "boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper." *A. Farber*, 234 F.R.D. at 188. *See also Hill v. Eddie Bauer*, 242 F.R.D. 556, 561 (C.D. Cal. 2007) (rejecting "general or boilerplate relevancy objection[s]" which failed to "provide[] any explanation at all why [discovery] requests are not relevant"). Shell does not offer any explanation as to why the information sought by the subpoena is irrelevant.[1]

**The Subpoena Seeks Information in Shell's Control**

Shell objects "to the extent that [Plaintiffs' subpoena] seeks information not in Shell's possession, custody, or control." Without specific details, this objection lacks legal merit and (worse) complicates the meet and confer process. *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 660-61 (D. Kan. 2004) (disapproving of objecting "'to the extent'" an objection "may apply to particular requests for discovery . . . as worthless for anything beyond delay of the discovery.

---

[1]   Notably, Shell "is not a party to the case and [is] in no position to be an arbiter of relevance therein." *Pivitol Colorado II, LLC v. Triple M Beteiligungs-GMBH & Co KG*, No. 07-01991, 2008 WL 349059, *2 (D. Colo. Feb. 6, 2008). *See also Cooney v. Sun Shipbuilding & Drydock Co.*, 288 F. Supp. 708, 717 (E.D. Pa. 1968) ("having no interest in the outcome of the case, arguments as to 'relevancy' and 'materiality' are not appropriate concerns to . . . witnesses" who receive a subpoena).

Taylor Moore
December 16, 2020
Page 4 of 5

Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery"; finding such objections waived).

There is no reason to believe any of the documents identified in the subpoena would be outside Shell's control, for purposes of the subpoena. Rule 45 can "command each person to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control[.]" Fed. R. Civ. P. 45(a)(1)(A)(iii) (emphasis added). In the context of Rule 45, "[c]ontrol is defined as the legal right to obtain documents upon demand." *United States v. International Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989).

> [A]ctual possession of the requested documents is not required. A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document.

*Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D.Cal. 1995). "Courts apply the legal control test to requests for documents under both Rule 34 and Rule 45. 'A rule 45 subpoena, as well as a rule 34 document request, [covers] documents within the possession, custody or control of the subpoenaed person." *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005) (citation, punctuation omitted). "Cases construing the words 'possession, custody or control' in Rule 34 are helpful in applying these principles in the context of Rule 45." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2456 (3d ed. 2020).

**<u>Shell's Privilege Objection Lacks Merit</u>**

Shell's objections that the subpoena seeks privileged information also lack merit. Rule 45 expressly requires Shell to "describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). *See also Forsythe v. Brown*, 281 F.R.D. 577, 588, 589 (D. Nev. 2012) (predecessor to Rule 45(e)(2)(A) "requires a person withholding subpoenaed information under a claim of privilege. . . to provide a privilege log"). Hence, a general objection "'to the extent [subpoenas] seek documents protected by the attorney-client privilege, work product doctrine, or other applicable privilege against disclosure' . . . do[es] not satisfy the requirements of Rule 45(d)(2)." *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995). Rather, Shell has to provide an adequate privilege log if it wants to rely on this objection. *Id.* (citing *Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal.1992) for requirements for adequate privilege

Taylor Moore
December 16, 2020
Page 5 of 5

log)). Plaintiffs do not waive any argument that production of a privilege log would be untimely at this point. *Cf*. Fed. R. Civ. P. 45(d) advisory committee's notes on 1991 amendment (person "claiming a privilege . . . who fails to provide adequate information about the privilege . . . claim to the party seeking the information is subject to an order to show cause why the person should not be held in contempt").

## **Resolution**

Plaintiffs reserve all rights with respect to the subpoena and any action required to enforce the subpoena. Given the posture of this particular case, Plaintiffs may need to seek judicial intervention if Shell is not actively and timely involved in the meet and confer process. There appears to be a fundamental issue with communication between Shell and Plaintiffs' counsel. If that issue is resolved, however, Plaintiffs' counsel hope and expect that the parties will be able to reach solutions that accommodated everyone involved.

Sincerely,

Ethan Preston

**Subject:** Re: Subpoena (Shell Energy North America (US), L.P.) - Katz, Samuel v. Liberty Power Corp LLC, et al.-2020-20230
**From:** Ethan Preston <ep@eplaw.us>
**Date:** 12/7/20, 5:27 PM
**To:** Valerie.Vallot@shell.com
**CC:** Taylor.T.Moore@shell.com, 'Shaun Lieberman' <ylieberman@parasmoliebermanlaw.com>

Valerie,

Thanks for your email. As you know, the subpoena includes preservation instructions, and imposes duties on Shell other than production. We are amenable to continuing Shell's obligation to produce documents under the subpoena until after the holidays. However, (1) we cannot consent to continuing any other duty that arises under the subpoena; and (2) we will need Shell's production in advance of our own case management deadlines early next year (we need Shell's documents for a motion to amend, in advance of our March 12 deadline to move to compel) so February 12 might ultimately be a touch late for us.

I think it would also be productive to discuss whether we can narrow the production to minimize any burden, while still meeting Plaintiffs' litigation needs.

That said, we're happy to talk with Taylor and are available Tuesday on.

Thanks,

Ethan

On 12/7/20 7:52 AM, Valerie.Vallot@shell.com wrote:

> Mr. Preston,
>
> Shell Energy North America (US) LP ("SENA") is in receipt of a subpoena requesting records relating to SENA's communications/transactions with Liberty Power Corp., LLC, and/or Liberty Power Holdings, LLC, for the time period 2014 to present.  The current due date noted in the subpoena is December 16, 2020.  I am seeking a 60-day extension in which to respond, which would make the records due Friday, February 12, 2021.  Further, regarding the request, may I schedule some time for a call with you and Taylor Moore, the Shell attorney that will be handling this subpoena, to get some background information regarding the requests?

Case 3:21-cv-00133-W-MSB   Document 1-3   Filed 01/22/21   PageID.79   Page 57 of 64

Thanks in advance,

**Valerie Vallot**
Paralegal
Shell Oil Company
150 N. Dairy Ashford
Ste. F0624B
Houston, TX 77079

(:   (832) 337-8761
*:   valerie.vallot@shell.com

*This message and all attachments may be confidential and protected by the attorney-client and other privileges.  Any retention, review, use, dissemination, forwarding, printing, copying, disclosure or distribution by persons other than the intended recipients is prohibited and may be unlawful.  If you have received this communication in error, please contact the sender and delete this message and any copy of it (in any form) without disclosing it.   Unless expressly stated in this email, nothing in this message should be construed as a digital or electronic signature.  Thank you for your cooperation.*

**Subject:** Re: Subpoena (Shell Energy North America (US), L.P.) - Katz, Samuel v.
Liberty Power Corp LLC, et al.-2020-20230
**From:** Ethan Preston <ep@eplaw.us>
**Date:** 12/11/20, 4:38 PM
**To:** Valerie.Vallot@shell.com
**CC:** Taylor.T.Moore@shell.com, 'Shaun Lieberman'
<ylieberman@parasmoliebermanlaw.com>

My apologies, my co-counsel and I have been struggling to get together on times we can
both be available to speak with you. I'm pasting my December 7 email below for your
convenience. As I indicated, we will agree on an extension until after the holidays.

Let's shoot for Monday, next week. I am available any time after 10am CT.

On 12/7/20 5:27 PM, Ethan Preston wrote:

> Valerie,
>
> Thanks for your email. As you know, the subpoena includes preservation instructions,
> and imposes duties on Shell other than production. We are amenable to continuing
> Shell's obligation to produce documents under the subpoena until after the holidays.
> However, (1) we cannot consent to continuing any other duty that arises under the
> subpoena; and (2) we will need Shell's production in advance of our own case
> management deadlines early next year (we need Shell's documents for a motion to
> amend, in advance of our March 12 deadline to move to compel) so February 12
> might ultimately be a touch late for us.
>
> I think it would also be productive to discuss whether we can narrow the production
> to minimize any burden, while still meeting Plaintiffs' litigation needs.
>
> That said, we're happy to talk with Taylor and are available Tuesday on.
>
> Thanks,
>
> Ethan

On 12/9/20 1:12 PM, Valerie.Vallot@shell.com wrote:

Mr. Preston,

I just left you a voicemail regarding your subpeona to SENA.  Please contact either myself or Taylor Moore.  Our current due date is December 16th and we would like to visit with you regarding the requests and an extension.

Thank you,

**Valerie Vallot**
Paralegal
Shell Oil Company
150 N. Dairy Ashford
Ste. F0624B
Houston, TX 77079

(:    (832) 337-8761
*:    valerie.vallot@shell.com

*This message and all attachments may be confidential and protected by the attorney-client and other privileges.  Any retention, review, use, dissemination, forwarding, printing, copying, disclosure or distribution by persons other than the intended recipients is prohibited and may be unlawful.  If you have received this communication in error, please contact the sender and delete this message and any copy of it (in any form) without disclosing it.   Unless expressly stated in this email, nothing in this message should be construed as a digital or electronic signature.  Thank you for your cooperation.*

---

**From:** Vallot, Valerie L SHLOIL-LSL/A
**Sent:** Monday, December 7, 2020 7:52 AM
**To:** 'ep@eplaw.us' <ep@eplaw.us>
**Cc:** Moore, Taylor SHLOIL-LSL/A <Taylor.T.Moore@shell.com>
**Subject:** Subpoena (Shell Energy North America (US), L.P.) - Katz, Samuel v. Liberty Power Corp LLC, et al.-2020-20230

Mr. Preston,

Shell Energy North America (US) LP ("SENA") is in receipt of a subpoena requesting records relating to SENA's communications/transactions with Liberty Power Corp., LLC, and/or Liberty Power Holdings, LLC, for the time period 2014 to present.  The current due date noted in the subpoena is December 16, 2020.  I am seeking a 60-day extension in which to respond, which would make the records due Friday, February 12, 2021.  Further, regarding the request, may I schedule some time for a call with you and Taylor Moore, the Shell attorney that will be handling this subpoena, to get some background information regarding the requests?

Thanks in advance,

**Valerie Vallot**
Paralegal
Shell Oil Company

Re: Subpoena (Shell Energy North America (US),...

150 N. Dairy Ashford
Ste. F0624B
Houston, TX 77079

(:    (832) 337-8761
*:    valerie.vallot@shell.com

*This message and all attachments may be confidential and protected by the attorney-client and other privileges.  Any retention, review, use, dissemination, forwarding, printing, copying, disclosure or distribution by persons other than the intended recipients is prohibited and may be unlawful.  If you have received this communication in error, please contact the sender and delete this message and any copy of it (in any form) without disclosing it.   Unless expressly stated in this email, nothing in this message should be construed as a digital or electronic signature.  Thank you for your cooperation.*

**Subject:** Re: Subpoena (Shell Energy North America (US), L.P.) - Katz, Samuel v. Liberty Power Corp LLC, et al.-2020-20230
**From:** Ethan Preston <ep@eplaw.us>
**Date:** 12/14/20, 10:39 AM
**To:** Taylor.T.Moore@shell.com, Valerie.Vallot@shell.com
**CC:** 'Shaun Lieberman' <ylieberman@parasmoliebermanlaw.com>

Hi Taylor,

I wanted to include my prior emails to you below. I still need to touch base with my co-counsel and find some availability, but we're mindful of the December 16 production date of course. However, I expect we can push out any response deadline until after the holidays (but are not in a position to provide a 60 day extension because of our own case management deadlines). Why don't we agree on January 8?

I'll get back to you once I know when Shaun is available.

Thanks,

Ethan


On 12/11/20 4:38 PM, Ethan Preston wrote:

> My apologies, my co-counsel and I have been struggling to get together on times we can both be available to speak with you. I'm pasting my December 7 email below for your convenience. As I indicated, we will agree on an extension until after the holidays.
>
> Let's shoot for Monday, next week. I am available any time after 10am CT.
>
> On 12/7/20 5:27 PM, Ethan Preston wrote:
>
>> Valerie,
>>
>> Thanks for your email. As you know, the subpoena includes preservation instructions, and imposes duties on Shell other than production. We are amenable to continuing Shell's obligation to produce documents under the subpoena until after the holidays. However, (1) we cannot consent to continuing any other duty

that arises under the subpoena; and (2) we will need Shell's production in advance of our own case management deadlines early next year (we need Shell's documents for a motion to amend, in advance of our March 12 deadline to move to compel) so February 12 might ultimately be a touch late for us.

I think it would also be productive to discuss whether we can narrow the production to minimize any burden, while still meeting Plaintiffs' litigation needs.

That said, we're happy to talk with Taylor and are available Tuesday on.

Thanks,

Ethan

On 12/14/20 9:04 AM, Taylor.T.Moore@shell.com wrote:

Hi Mr. Preston,

I am following up on Valerie's previous emails as well as her voicemail. Are you agreeable to a 60-day extension for this subpoena? Additionally, we would really like to speak with you regarding the records that you have requested. As noted below, the current due date is December 16th. Shell would prefer to work with you through this matter, but, in an effort to remain in compliance, will have to object to this subpoena on December 16th if we do not hear from you by then.

Many thanks and hope to hear from you soon.

Taylor

Taylor Moore
Legal Counsel—Global Litigation
Shell Oil Company
150 N Dairy Ashford,
Houston, TX 77079

(:  +1 (832) 337-0905
*:  Taylor.T.Moore@shell.com



*This message and all attachments may be confidential and protected by the attorney-client and other privileges. Any retention, review, use, dissemination, forwarding, printing, copying, disclosure or distribution by persons other than the intended recipients is prohibited and may be unlawful. If you have received this communication in error, please contact the sender and delete this message and any copy of it (in any form) without disclosing it. Unless expressly stated in this email, nothing in this message should be construed as a digital or electronic signature. Thank you for your cooperation.*

---

**From:** Vallot, Valerie L SHLOIL-LSL/A <Valerie.Vallot@shell.com>
**Sent:** Wednesday, December 9, 2020 1:12 PM
**To:** ep@eplaw.us
**Cc:** Moore, Taylor SHLOIL-LSL/A <Taylor.T.Moore@shell.com>
**Subject:** RE: Subpoena (Shell Energy North America (US), L.P.) - Katz, Samuel v. Liberty Power Corp LLC, et al.-2020-20230
**Importance:** High

Mr. Preston,

I just left you a voicemail regarding your subpeona to SENA. Please contact either myself or Taylor Moore. Our current due date is December 16th and we would like to visit with you regarding the requests and an extension.

Thank you,

**Valerie Vallot**
Paralegal
Shell Oil Company
150 N. Dairy Ashford
Ste. F0624B
Houston, TX 77079

(:    (832) 337-8761
*:    valerie.vallot@shell.com

*This message and all attachments may be confidential and protected by the attorney-client and other privileges. Any retention, review, use, dissemination, forwarding, printing, copying, disclosure or distribution by persons other than the intended recipients is prohibited and may be unlawful. If you have received this communication in error, please contact the sender and delete this message and any copy of it (in any form) without disclosing it. Unless expressly stated in this email, nothing in this message should be construed as a digital or electronic signature. Thank you for your cooperation.*

---

**From:** Vallot, Valerie L SHLOIL-LSL/A
**Sent:** Monday, December 7, 2020 7:52 AM
**To:** 'ep@eplaw.us' <ep@eplaw.us>

**Cc:** Moore, Taylor SHLOIL-LSL/A <Taylor.T.Moore@shell.com>
**Subject:** Subpoena (Shell Energy North America (US), L.P.) - Katz, Samuel v. Liberty Power Corp LLC, et al.-2020-20230

Mr. Preston,

Shell Energy North America (US) LP ("SENA") is in receipt of a subpoena requesting records relating to SENA's communications/transactions with Liberty Power Corp., LLC, and/or Liberty Power Holdings, LLC, for the time period 2014 to present.  The current due date noted in the subpoena is December 16, 2020.  I am seeking a 60-day extension in which to respond, which would make the records due Friday, February 12, 2021.  Further, regarding the request, may I schedule some time for a call with you and Taylor Moore, the Shell attorney that will be handling this subpeona, to get some background information regarding the requests?

Thanks in advance,

**Valerie Vallot**
Paralegal
Shell Oil Company
150 N. Dairy Ashford
Ste. F0624B
Houston, TX 77079

(:    (832) 337-8761
*:    valerie.vallot@shell.com

*This message and all attachments may be confidential and protected by the attorney-client and other privileges.  Any retention, review, use, dissemination, forwarding, printing, copying, disclosure or distribution by persons other than the intended recipients is prohibited and may be unlawful.  If you have received this communication in error, please contact the sender and delete this message and any copy of it (in any form) without disclosing it.   Unless expressly stated in this email, nothing in this message should be construed as a digital or electronic signature.  Thank you for your cooperation.*